The next case today is Michael LaChance v. Town of Charlton et al. Appeal number 201103. Mr. Pinheiro, whenever you're ready. Thank you, Your Honor. My name is Hector Pinheiro. May I please the Court and the panel? I have the pleasure of representing Michael LaChance, the appellant in this matter. Michael LaChance woke up in the throes, experienced a medical emergency in January of 2014, which brought him in contact with the Charlton Police Department. The first error that occurred in this case was that the district court granted qualified immunity. That was erroneous after the district court judge had found that throwing a person forcefully over a sofa, resulting in that person suffering two fracture vertebras was excessive. Only for the court to point out subsequently or shortly after that, that accordingly, the initial push may have been a reasonable use of force. How the court got there, it's unclear to me, perhaps because the court was following the general black letter proposition that not every push, every shove offends the Fourth Amendment. But if we characterize this as a forceful push, this was the mother of all pushes. Because when it happened, my client was thrown into this 50 pound lacy boy recliner and with two officers to his side, Officer White and Officer Smith. Both of them flipped over, including my client, and landed between the kitchen and the living room area. My client landing hard on the ground in the area of his back and in the area of the shoulder. That's a testimony. We know in this case that all of the three defendants have had exposure with people with seizures and disabilities because every law enforcement officer is trained in CPR and through the American Heart Association. All of them at the summary judgment record. Only Officer Smith testified at trial. A witness that we call said that they had encountered people with seizures. And and this case had all the signatures of the seizure. Officer Smith tells at summary judgment in a trial that my client has urinated on himself, that he's bleeding from his mouth because he appears to have bit his tongue at his disoriented. And everybody agrees in this case, including the court, that this was a medical emergency case. This was not a regular criminal law enforcement encounter. So how how did we get from finding that there was an excessive use of force to finding that there was qualified immunity, despite the fact that there is case law not only in the circuit, but in other in other jurisdictions, in other circuits? And how does the court justify the granting of summary judgment? First, it slides to two or three cases that are completely dissimilar to my case. One of them is the Rasmussen versus City of New York, Eastern District of New York, 2011. And that's a case that was properly decided, but distinguished, distinguishable on fact and law. Rasmussen runs away from cops. He has drugs, runs into apartment, which is a dangerous situation. Hides in a closet, which is even more dangerous. Officers have their guns drawn. One of them pistol whips him and then they throw him in a bed and they cause some other injuries. The court thinks that that type of pushing and pulling is acceptable under the Fourth Amendment and perhaps comparable to the circumstances on this case. The next case it cites, it's a theory and versus town of Jay is a district of Maine case from 2007 that, like Rasmussen, is completely distinguishable as well. That's a felony stop where a person driving under the influence of alcohol runs away from police. So the police have to point their weapons at him. And eventually they tackle them. Therian, in our view, was was correctly decided under the Fourth Amendment and the application of the Graham factors. Counsel, what facts were in evidence that would put the police on notice that they were dealing with a disability or seizure situation as opposed to a substance abuse situation? How were they to distinguish? Well, because they have been trained and because they there's also another key, another key evidence. The son testify at trial that he heard one of the paramedics say he's ceasing. He's ceasing. And that information came into into the record at trial. And it came at summary judgment. And I also believe that it came at trial, but it wouldn't make any difference for purposes of this case because they had enough information to believe that that that he had a seizure. Then the next thing. Is it your position that this boils down to a factual dispute as to whether the amount of force applied was excessive? Absolutely. It does, Your Honor. And the next important point is that there's a case. Counsel, can I just ask you to follow up on on Judge Thompson's question? The district court judge determined that the use of force was excessive. Did he not? He did. Right. Then the question becomes whether the officers would have reasonably known that there was a clearly established right for them to react differently. Yes. And as I understand it, the district court judge said, well, looking at, you know, First Circuit president precedent. The officers would not have known that there was a clearly established right to behave otherwise. Hence summary judgment. I differ from that judge because there is there's a number of cases in Massachusetts that froze that throwing using throwing, yanking, slamming, putting the knees behind somebody's back who's not resisting violates the Fourth Amendment for that. And those cases were discussed in the judge's opinion. They were discussed in our motion for reconsideration. Celino versus Geico's First Circuit, 2015, the throwing of a person to the ground because he disobeys the police. Morelli versus Webster, Alexis versus McDonald, grabbing, pulling somebody from a booth and throwing them in the back of a police car. Another case where Judge Hillman was involved, we cited Coke versus Smith, grabbing, throwing and kneeing a woman who has been arrested violates the Constitution. McHugh versus city of Bangor, Reiki versus Petroski. But in addition to that, there is a universe of cases where the constitutional principle is understood and the officers don't need to have pre-existing. They don't need to have notice of precedent because they're on notice that that conduct violates the Constitution. That's a line of cases of Jennings versus Jones. That's a line of cases like the recent circuit court that the person could decide of the case of Irish versus Detective Jason Fowler. And in terms of having robust consensus, all we need is a rather circuit court long sufficient to establish that it's clearly established. For that, we cited Smith versus Troy, Lynn versus city of Indianapolis. That was on all fours. We cited Guthrie. We cited Farah. These were all cases where people. And by the way, in all of those cases, the police also said, well, I didn't know he was having a seizure. The courts in those cases denied summary judgment. So that would be on the first issue. The other issue was this artificial employment of the segmented analysis and analysis. If you as far as I can tell, if I look at the segmented analysis, this is a term that is not even discussed by the first circuit. It's been adopted by the six. Some cases in the Seventh Circuit and in the fourth have have discussed it. But what the judge did. What did it say if it wasn't segmented when they talk about escalating the pressure? I didn't hear the initial question, Judge Thompson. I'm sorry. How would how would you describe what the court actually did in Sampson when they're talking about the escalation that occurred there? And it seemed to be a segmenting argument to me, even though they didn't call it that. I have no no problems with a segmenting argument. If, for instance, the police use excessive force when they tie somebody, then they bring him to the station and something else happens. But what the court did here from the comfort of the judges chamber, which is counseled against by Graham versus Connor, is it decided to freeze something, an event that happened within less than two minutes, which was fluid, which was rapid to distinguish one one theory of the case that the court found more compelling than the other. And so how do you distinguish Sampson from what happened here? I'm sorry, Your Honor. I have not read the Sampson case carefully. OK. All right. Mr. Panera. Go up, Judge Katzmann. One question. Can you cite a case which rejects this segmented analysis? No, I cannot cite a case that that rejects the segmented analysis. All I'm saying is that the application of the segmented analysis in this case to deny my client had the right to bring all of his injuries to the jury. That's what this court has said in Dean versus city of Worcester in Bastion versus Goddard in 2002. I don't need to have a serious injury. The court focused on causation only. And at the end of the case, when the judge directed the case, says the only injury that you can prove is the serious injury on the back. We spent considerable time with a judge, Dr. Chirkoff, establishing to the court that there were other injuries that were distinct from the broken back. We'll hear from Mr. Lipson now. Mr. Pinheiro, if you could mute your audio and video. All right. Thank you, Your Honor. May it please the court on behalf of the respondents, Charlton, if I may just get directly into it. I think the segmented analysis was correct in this particular case, notwithstanding the fact that the incidents. And I'm talking about the fall over the chair is one incident. And the alleged knee on the back is the second incident. Two separate incidents, notwithstanding the fact that they occurred within a short period of time. The judge in his summary judgment decision found excessive force in the entirety and then looked at it separately and said that although the push over the chair may have been more force than is necessary. He assumed that it was a lot of force. Qualified immunity in this particular situation was correct, because as you can see from the facts of the case, this was not a situation of some malicious push. Just knock the guy down. These police officers were confronted with this very out of control individual needed in order to protect himself from hurting himself or hurting the EMTs and others to get him to calm down. Make sure that he doesn't run out of that second floor apartment onto that ice covered stairway and they wanted to get him into his chair and something happened. But by the facts of the plaintiff and two officers falling down altogether, sort of, I think assumes that it was more accidental than malicious. Maybe additional force was used, but it certainly wasn't anything malicious. So as to ignore qualified immunity in these offices are using their best efforts to try to protect this guy. The segmented approaches is the way to go here, but why isn't it? Why isn't it reasonably viewed as the officer's entire effort to get the plaintiff under control? Why would it? Why should it be viewed as segmented when it was a matter, as you just argued, getting an out of control person because of illness under control? Well, just because the way the court just looked at it and said, I'm really suggesting that, first of all, putting a knee on somebody's back may actually be excessive force. And let's go to trial on that. Whereas the push over the chair was seemed to be either accidental or something that qualified immunity really should be looking at, because just pushing over a chair to get the guy to sit down is a lot different than the knee on the back. Which could be construed as more of a serious, more of an intentional type of violence. So I thought that that was the way to go. And let's although I suggested the entire incident should be should be looked at as either not excessive force or qualified immunity. With respect to the kneel on the back, the judge basically determined that based upon the expert testimony, there was not sufficient proof of causation. So, Hattie, when the case as the case went to trial on that point, was the preceding evidence regarding the pushing over the, you know, the chair and sofa. Was that all part of the evidence that came in? No, Your Honor. No, Your Honor. And that was a contention, because if that had been dismissed, it was it was only mentioned in brief to kind of put the atmosphere together as far as what happened in the incident. But very little, if any, was discussed about the chair just so that so the jury would know how the guy got on the floor in the first place. It was just brought up as an introductory situation. I mean, the judge decided that a directed verdict would be based on causation. I would suggest that in the facts in the light most favorable to the plaintiff that they would have been entitled to qualified immunity for that as well. But the facts, Your Honor, were both at the summary judgment standard at the summary judgment time and at trial that there was no injury whatsoever as a result of an alleged knee on the back. Judge Dr. Chirkoff had reported at summary judgment and he testified consistently for the plaintiff at the trial that the only injury or the really the only injury was the compression fracture to the back, which was caused when he fell over the chair and that there was no injury when anybody put a knee on the back. If that happened, he looked at bruising and said the bruising is where the fracture was. And even under redirect examination of the expert on the second day of his testimony, trying to get the doctor to say something about the knee on the back, he didn't. The last thing he said was, well, look, it didn't help. But that certainly isn't enough for causation. And that was just kind of almost a throwaway thing. Didn't help. Certainly didn't help. Putting him in a stretcher wouldn't help. Taking him down the stairs wouldn't help. But that's not an injury. The courts look at the common law standard for causation, even in a constitutional violation. You don't need an excessive, very serious injury, but you need some injuries, Your Honor. And as I've cited, the courts have said the minimus injuries are excluded. I mean, the fact that somebody, I'm not minimizing it, but just for example, if a police officer brushes his body up against a fellow when he's arresting him, I mean, that may be an unwanted touching, as we know, as an assault is. But it's not an injury that was caused by a constitutional violation. And I would suggest even in the light. Yes, Your Honor. Sorry. What did he say to a reasonable degree of medical certainty caused the injury? Did he exclude the knee on the back from that reasoned opinion? Yes, Your Honor. And I suggest it was in the summary judgment record that the compression fracture caused as a result of falling over the chair. And there was no injury thereafter. You know, I believe in the cross-examination, he said there wasn't any subsequent injury, a different injury from a knee on the back. And it didn't help is the best he could say, as far as I understand, for the plaintiff. You and your brief counsel discussed the Sixth Circuit case of the State of Hill versus Miracle. Yes. And are you suggesting that the First Circuit adopt similar principles of analysis for a case such as the one that's before us now? Yes. Yes, Your Honor. In fact, the court didn't get there in that gray case in 2019, where for the first time said that using a taser on a mentally, I don't know the words, a person suffering some type of a mental event was excessive force. But I would suggest you need to do that. The court needs to do that just because when we look at the Graham standards, we're really talking about a crime and an arrest, the severity of the crime. Was he resisting arrest? Well, there's no crime here to evaluate it. But Hill takes a look at that medical emergency, in fact. And I didn't mention it in the brief only. And I hate to bring it up. Well, I don't hate to bring it up. But a month ago, the Seventh Circuit decided a case on November 3rd called Turner versus City of Champaign, in which the facts are almost similar to this. It was a person having a seizure. Police used the knee on the back. And they talked about the use of force, which is reasonable to be used in any type of detention, whether it's a criminal detention or arrest detention or a mental health detention. But if the Hill standard is, one, is the person suffering a medical emergency? And the answer is yes here. And was force necessary to ameliorate the threat to himself or others? And again, the police had testified at the deposition that he was running. He was half naked. He was running out that door. They were afraid he was going to go off, you know, off the second floor, that they wanted to sit him down because the EMTs were standing by. They didn't want to touch him because he was swinging his arms around. So some force was necessary to ameliorate the threat, whether or not in that split second the police officers used a little too much force, causing them all to go over the chair. That's why the judge made the determination. So it's what's force necessary and what's their excessive force. Those are the three things in Hill to look at in these type of mental health situations, which I think probably come up as much or as many times as they do a criminal situation. You're on. So I would. And again, if I just may mention, it looks like the plaintiff had waived the ADR argument because it wasn't argued in this brief. And I just wanted to make sure that was that was there. And again, like I say, the knee again, if you look at that knee aside from the injury. I guess I'm out of I was 10 to 15 seconds is the plaintiff said a 30 seconds while they were trying to put pillows under his head while they use two sets of handcuffs so he wouldn't have to pin his arms backwards. And one just trying to keep his legs from kicking. And if if there was if there was this touching by the knee to do that, it was an excessive force. Thank you, Your Honor. Thank you. Thank you both. Thank you. That concludes argument in this case. Attorney Pinheiro and Attorney Lewis and you should disconnect from the hearing at this time.